UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ALFRED PATTON,

        Plaintiff,                      Case No. 2:18-cv-170

v.                                            Honorable Janet T. Neff

SUSAN M. WILSON et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants McLean, LaPlaunt, Corizon Health, Inc., and the Michigan Department of Corrections.

## Discussion

      I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harrison Correctional Facility (ARF) in Adrian, Lenawee County, Michigan.

The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Nurse Practitioner Susan M. Wilson, Gerald Colvert, R.N., Maria Bennett, R.N., Unknown Waybrant, R.N., Unknown Guild, R.N., Grievance Coordinator Michael McLean, Health Care Manager Melissa LaPlaunt, Corizon Health, Inc., and the Michigan Department of Corrections (MDOC).

Plaintiff alleges that on November 25, 2015, he began to experience vomiting and pain in his stomach that reached around to his back after eating. Plaintiff states that Corrections Officer Olmstead called health services on Plaintiff's behalf. Subsequently, Plaintiff was examined by Defendant Bennett, who told Plaintiff that there was nothing wrong with him and refused to schedule Plaintiff to see the doctor. Defendant Bennett checked Plaintiff's temperature and gave him some antacid pills and some liquids. Once back at his unit, Plaintiff experienced continued stomach pain and vomiting. Corrections Officer Olmstead again called health services.

On November 29, 2015, Corrections Officer Olmstead told Plaintiff that health care wanted to speak to him on the phone. Plaintiff told an unknown nurse that he was not feeling much better and still had some stomach pain. Plaintiff was scheduled to see a health professional on December 1, 2015. On April 4, 2016, Plaintiff again experienced severe pain and reported it to Prisoner Counselor Thompson, who told Plaintiff to kite health care and request a doctor's appointment. On April 22, 2016, Plaintiff was seen by a nurse who gave him some unknown medication, which merely worsened Plaintiff's symptoms. Plaintiff was told he would be called out for a follow-up in two weeks.

Plaintiff experienced severe stomach pain on July 19, 2016, and was seen by the nurse. On July 22, 2016, Plaintiff had a reaction to the reflux medication and was placed on callout to be seen by Defendant Wilson. On September 28, 2016, Plaintiff again experienced severe

abdominal pain and complained to Corrections Officer Hall. Plaintiff was sent to health care and seen by an unknown nurse, who took his temperature and weight and charged him a $5.00 co-pay. On October 10, 2016, Plaintiff was seen by the doctor, who examined him and told him his x-rays were negative. On October 12, 2016, nursing staff did a stool test on Plaintiff. On November 29, 2016, Plaintiff again complained of abdominal pain and was told by Defendants Colvert, Bennett, Guild, Wilson, and other nurses that he was required to pay the $5.00 co-pay each time he complained to health care about the same symptoms, even though they did nothing to help him. Later that day, Plaintiff began vomiting and having diarrhea.

On December 1, 2016, Plaintiff asked Defendant Wilson if he could see the dietician and be placed on diet line because that might help alleviate his symptoms. Defendant Wilson explained that URF did not have a dietician and told Plaintiff to keep taking the reflux medication and drinking plenty of water. On December 2, 2016, health care staff called the unit to check on Plaintiff's symptoms. On December 5, 2016, Plaintiff suffered from pain and cramping.

Plaintiff continued to complain of pain and vomiting throughout 2017 and 2018. On August 13, 2017, Defendant Wilson told Plaintiff that he could not see a gastroenterologist or have an endoscopy because it was too expensive and would not be approved by Corizon or the MDOC. Defendant Wilson told Plaintiff to keep taking the reflux medication and drinking lots of water. Defendant Wilson told Plaintiff he could take Tylenol or Motrin for pain relief. Plaintiff's condition continued to worsen, and on March 26, 2018, Corrections Officer Olmstead sent him to health care because he was losing weight and visibly deteriorating. Defendant Bennett took Plaintiff's weight and vitals and asked him why he had not complained of his pain when he had been sent off site for a liver ultrasound. Plaintiff stated that he had not been experiencing pain at

3

that time. Plaintiff asked Defendant Bennett to refer him to the medical service provider and to recommend some tests and pain medication. Defendant Bennett told Plaintiff that there was nothing more she could do. Plaintiff filed a grievance regarding the denial of care.

On April 9, 2018, Plaintiff was again sent to health care for overwhelming pain and vomiting. However, Plaintiff was not given any relief. Between March of 2018 and July of 2018, Plaintiff filed several grievances on Defendants Wilson, Bennett, Colvert, Waybrant, Guild, and McLean for denial of treatment. Defendants McLean and Colvert conspired together by refusing to process Plaintiff's grievances. Plaintiff continued to experience pain and vomiting and was sent to health care by Corrections Officer Olmstead on several occasions.

Plaintiff alleges that Defendant Wilson retaliated against him for filing a grievance on her by telling Plaintiff that he was being overly dramatic that there was nothing wrong with him. Defendant Colvert continued to refuse to see Plaintiff when Corrections Officer Olmstead called about Plaintiff's symptoms, telling Olmstead that Plaintiff was faking. From August 1, 2018, until September 10, 2018, Plaintiff was sent to health care on a daily basis for extreme stomach pain, vomiting, weight loss, and general deterioration. Plaintiff was given antacids and was told that he was faking.

On September 10, 2018, Plaintiff had emergency surgery to remove one to two feet of Plaintiff's lower intestines as the result of a severe blockage, which was later determined to be the result of cancer that had developed over the preceding years. Plaintiff states that while at War Memorial Hospital, Dr. Kim L. McCullough told him that if he had not had surgery when he did, his intestines would have ruptured and he would have died. On September 18, 2018, Plaintiff was returned to URF, where Defendant Waybrant intentionally delayed Plaintiff's receipt of his prescribed medication by two hours in order to cause Plaintiff additional pain and suffering.

Plaintiff claims that Defendants were deliberately indifferent to his continued pain and suffering in violation of the Eighth Amendment, which caused him to deteriorate physically and to come close to death. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III. MDOC as Defendant

Plaintiff may not maintain a §1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under §1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002)

(citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

IV. Respondeat Superior

Plaintiff fails to make specific factual allegations against Defendants McLean and LaPlaunt, other than his claim that they failed to conduct an investigation in response to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants McLean and LaPlaunt engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

In addition, Defendant Corizon Health, a private corporation providing health care services to prison inmates, cannot be held liable under § 1983 on the basis of respondeat superior or vicarious liability. *Rouster v. County of Saginaw*, 749 F.3d 437, 453 (6th Cir. 2014); *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th

Cir. 1996). A private contractor is liable under § 1983 only when execution of the private contractor's policy or custom inflicts the alleged injury. *Monell*, 436 U.S. at 694; *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005). To satisfy the *Monell* requirements, "a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom of the [private contractor] was the 'moving force' behind the deprivation of the plaintiff's rights." *Miller v. Sanilac Cty.*, 606 F.3d 240, 255 (6th Cir. 2010). In his complaint, Plaintiff claims that Defendant Wilson told him that he could not see a gastroenterologist or have an endoscopy because it was too expensive and would not be approved by Corizon. However, Plaintiff fails to set forth any facts showing that Corizon actually had such a custom, or that any of the individual defendants actually sought approval for diagnostic tests on Plaintiff's behalf. Because Plaintiff has failed to allege any facts showing that he was injured as the result of a policy or custom of Corizon, his claim against Corizon Health is properly dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants McLean, LaPlaunt, Corizon Health, Inc., and the Michigan Department of Corrections will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

An order consistent with this opinion will be entered.


Dated:   December 18, 2018                    /s/ Janet T. Neff
                                              Janet T. Neff
                                              United States District Judge